FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 17, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUSTIN D.,[1]

                Plaintiff,

      v.

LELAND DUDEK, Acting
Commissioner of Social Security,[2]

                Defendant.

No.   2:24-cv-00266-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS**

      Due to lower back pain, bulging discs, right leg pain, anxiety, depression, social anxiety, insomnia, and high blood pressure, Plaintiff Justin D..  claims that

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek has been named the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

he is unable to work fulltime and applied for supplemental security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of William Roth, MD, improperly assessed Plaintiff's credibility as to his physical impairments, and erred in relying on vocational expert testimony at step five that was tainted by the prior two errors. As is explained below, Plaintiff has not established any consequential error. The ALJ's denial of benefits is affirmed.

## I.    Background

In October 2020, Plaintiff filed an application for benefits under Title 16, claiming disability beginning January 1, 2017, based on the physical and mental impairments noted above.[3] Plaintiff's claim was denied at the initial and reconsideration levels.[4]

After the agency denied Plaintiff benefits, ALJ Shawn Bozarth held a video hearing in September 2023, at which Plaintiff appeared with his representative.[5] Plaintiff testified at the hearing and a vocational expert also testified.[6]

---

[3] AR 243-252, 285.

[4] AR 165, 171.

[5] AR 38-63.

[6] *Id*.

After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ ruled that he found no basis to reopen a prior claim denied by an ALJ on August 14, 2017.[8] The ALJ also found that Plaintiff had rebutted the presumption of continuing nondisabilty pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1998), because the regulations to evaluate back impairments had changed and because Plaintiff alleged a worsening of his mental impairments.[9] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[10] As to medical opinions, the ALJ found:

- The opinions of consultative examiner A. Phillip Vanoy Gibson, PhD, to be persuasive in part – specifically to the extent that it restricted Plaintiff to a range of unskilled work with adaptive and social functioning limitations.

- The January 2018 and December 2022 opinions of treating source William Roth, MD, to be not persuasive.

- The opinions of treating source Nate Wareham, MS, to be not persuasive.

---

[7] AR 15-37.  Per 20 C.F.R. §§ 404.1520(a)-(g); 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 18.

[9] AR 18-19.

[10] AR 26-29.

- The opinions of state agency evaluators Karine Lancaster, MD, and Craig Billinghurst, MD, to be persuasive in part – specifically to the extent that they opined Plaintiff could perform a range of light work.

- The opinions of state agency evaluators W. Miller Logan, MD, and Susan Daugherty, PhD, to be not persuasive.[11]

The ALJ also considered the third-party witness statements of Plaintiff's mother, sister, and wife and found they were not generally consistent with the record as a whole.[12] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 22, 2020, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, generalized anxiety disorder (GAD), and major depressive disorder (MDD).

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and the ALJ specifically considered Listings 1.15, 1.16, 12.04, and 12.06.

---

[11] AR 29-31.

[12] AR 27

DISPOSITIVE ORDER - 4

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  [Plaintiff] must be allowed to change positions from sitting to standing and back for five minutes each hour while remaining on task at the work station; he could frequently climb, balance, kneel, crouch, and crawl, but he could only occasionally stoop; he could not perform jobs with concentrated exposure to dangerous machinery or moving machine parts or to unprotected heights; he could perform goal-oriented jobs with both simple or detailed instructions; he could perform jobs not done at an assembly line or at a production-quota pace; he could perform jobs with only occasional decision-making, occasional changes of workplace setting, and occasional changes to workplace routine; and he could perform a job that has only occasional contacts with supervisors, co-workers, and customers.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a collator operator (DOT 208.685-010), marker (DOT 209.587-034), and router (DOT 222.587-038 ).[13]

Plaintiff sought timely review from the Appeals Council and the Appeals Council denied review on November 17, 2023, after which Plaintiff filed suit in this Court.[14]

---

[13] AR 21-32.

[14] AR 1-7, 240.

DISPOSITIVE ORDER - 5

## II.     Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[15] and such error impacted the nondisability determination.[16] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17]

## III.     Analysis

Plaintiff seeks relief from the denial of disability on three grounds. He argues the ALJ erred when evaluating the medical opinions and when evaluating

---

[15] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[16] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[17] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Plaintiff's subjective complaints regarding his physical impairments, and those errors resulted in a third error at step five. As is explained below, the Court concludes that Plaintiff fails to establish the ALJ erred in his evaluation of the medical opinion evidence, or Plaintiff's symptom reports, and because there was no error at those steps, there was no error at step five.

**A.    Medical Opinion: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ erred in his evaluation of the medical opinions.[18] Specifically, Plaintiff first argues that the ALJ erred in rejecting the opinions of treating physician, Dr. Roth. Specifically, Plaintiff argues that the ALJ erred in failing to address the specific limitations that Dr. Roth opined Plaintiff would need to lie down to elevate his legs, would miss four or more days of work a month, can never reach with his upper extremities, is limited to frequent handling and fingering, and would be off task 30% of the time; and that the ALJ improperly rejected all of Dr. Roth's opined limitations because Plaintiff had limited and conservative treatment for back pain.[19] Plaintiff also argues that the ALJ failed to

---

[18] An ALJ must consider and articulate how persuasive he found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[19] ECF No. 8.

adequately discuss the supportability and consistency of Dr. Roth's opinions with the longitudinal record.[20]

1. <u>Standard</u>

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[21] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[22] Supportability and consistency are the most important factors,[23] and the ALJ must explain how he considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[24] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and

---

[20] *Id.*

[21] 20 C.F.R. § 416.920c(a), (b).

[22] *Id.* § 416.920c(c)(1)–(5).

[23] *Id.* § 416.920c(b)(2).

[24] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion was being given.[25] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[26]  An ALJ is not required to articulate how they considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c).[27]

### 2.    Dr. Roth's Opinions

On January 17, 2018, Dr. Roth completed a Documentation Request Form for Medical or Disability Condition.[28] Dr. Roth stated that Plaintiff suffered from the physical and emotional conditions of lower back pain, anxiety/depression, and borderline personality disorder.[29] He checked a box that Plaintiff's conditions limit his ability to work and that he would be able to work 0 hours per week and wrote that Plaintiff cannot sit for long without regularly moving and his anxiety had improved.[30] Dr. Roth checked a box that Plaintiff could perform sedentary work

---

[25] *Id.*

[26] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[27] 20 C.F.R. § 416.920c(d).

[28] AR 402.

[29] *Id.*

[30] *Id.*

and that his condition did not limit his access to accessing services, such as using the telephone, making and keeping appointments, and using transportation services.[31] Dr. Roth opined that Plaintiff's condition was not permanent and would last 10 months, and that he anticipated Plaintiff would start looking for work in the fall.[32] Dr. Roth stated that the treatment plan was for Plaintiff to receive physical therapy and counseling at their offices and said Plaintiff needed physical therapy, work hardening, and control of anxiety.[33]

On December 15, 2022, Dr. Roth completed a Medical Report.[34] Dr. Roth said he had treated Plaintiff from October 20, 2014 to December 15, 2022, that Plaintiff was diagnosed with lower back pain and anxiety, and that Plaintiff's anxiety was worsening.[35] He checked a box that Plaintiff would need to either lie down or elevate his feet and explained that Plaintiff would need to occasionally lie down to get pressure off his back.[36] He said that Plaintiff's medications may affect driving and his cognitive abilities and that he has back pain and a "fair" prognosis.[37]

---

[31] AR 403.

[32] *Id.*

[33] AR 403-404.

[34] AR 514-516.

[35] AR 514.

[36] *Id.*

[37] *Id.*

Dr. Roth checked a box that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate and hand-wrote that Plaintiff can only stand for 1 hour before he has to sit down or must move positions frequently, and that Plaintiff has burning sensation down his leg.[38]

Dr. Roth checked boxes that Plaintiff would likely miss 4 or more days of work a month and wrote that Plaintiff would likely be off task for 30% of the day.[39] Dr. Roth opined that Plaintiff could not even perform the demands of sedentary work, that he could never reach bilaterally, and that bilateral handling and fingering was limited to occasional.[40] Dr. Roth wrote that the restrictions existed since 2014, and that Plaintiff had back problems since age 16 and cannot engage in heavy lifting or inappropriate lifting.[41] Dr. Roth also stated that Plaintiff's anxiety has not allowed him to have much exposure in public.[42]

3.    Relevant Medical Records

On April 3, 2017, Plaintiff presented to Dr. Roth for a follow-up visit for low back pain, requesting that he be sent for an MRI and given medication for

---

[38] *Id.*

[39] AR 515.

[40] *Id.*

[41] AR 516.

[42] *Id.*

heartburn.[43] Plaintiff reported that his back pain was located in the lower lumbar spine and radiated into the right and left buttock; was intermittent, moderate in intensity and throbbing and aching; and that the pain began ten years prior when he was twisting.[44] Plaintiff also reported anxiety disorder characterized by symptoms of apprehension, palpitations, and tachycardia occurring several times a month.[45] Plaintiff reported that he was taking his hydrocodone as directed and that it relieved 75% of his pain in the last week, with an average pain being 6/10 and a highest pain level of 10/10.[46] The results of a back examination were Plaintiff's back had normal skin, soft tissue appearance, normal cervical and lordotic curve, and no evidence of edema or acute injury; as well as pain on palpation of the lumbar spinous processes, lumber spinous interfaces, and lumbar paraspinal muscles; and there was spasm of the left and right paraspinal muscles.[47]

On July 12, 2017, Plaintiff presented to Dr. Roth for a follow-up visit for low back pain, requesting that he be sent for an MRI and given medication for heartburn.[48] Plaintiff reported that he was taking his hydrocodone as directed and

---

[43] AR 384.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] AR 386.

[48] AR 380.

1  that it relieved 75% of his pain in the last week, with an average pain being 6/10

2  and a highest pain level of 10/10.[49] The results of a back examination were normal

3  other than spasm of the left and right paraspinal muscles.[50]

4      On October 12, 2017, Plaintiff presented to Dr. Roth for a follow-up visit for

5  low back pain, again requesting that he be sent for an MRI and given medication

6  for heartburn.[51] Plaintiff reported that he was taking his hydrocodone as directed

7  and that it relieved 90% of his pain in the last week, with an average pain being

8  3/10 and a highest pain level of 7/10.[52] The results of a back examination were

9  normal other than spasm of the left and right paraspinal muscles.[53]

10      On January 4, 2018, Plaintiff presented to Dr. Roth for follow-up for low

11  back pain, radiating into his leg and requested that he be sent for an MRI and

12  given medication for heartburn.[54] Dr. Roth noted that Plaintiff was also to be

13  evaluated for mild depression with "fairly infrequent" symptoms.[55] Plaintiff

14  reported that he was taking his hydrocodone as directed and that it relieved 90% of

---

[49] *Id.*

[50] AR 382.

[51] AR 375.

[52] *Id.*

[53] AR 377.

[54] AR 371.

[55] *Id.*

his pain in the last week, with an average pain being 3/10 and a highest pain level of 7/10.[56] Dr. Roth noted that Plaintiff's current medications were olanzapine, Lisinopril, venlafaxine, gabapentin, naproxen hydrocodone/acetaminophen, omeprazole, zolpidem, and hydroxyzine.[57] Dr. Roth noted that the results of a back examination were identical to the previous exams with spasm of the left and right paraspinal muscles.[58] Dr. Roth assessed depression, low back pain, borderline personality disorder, esophagitis due to GERD, chronic pain syndrome, benign hypertension, and hypogonadotropic hypogonadism.[59]

On January 17, 2018, Plaintiff was examined by Dr. Roth.[60] Dr. Roth noted that on examination Plaintiff's back had normal skin, soft tissue appearance, normal cervical and lordotic curve, and no evidence of edema or acute injury.[61] He also noted that there was pain on palpation of the lumbar spinous processes, lumber spinous interfaces, and lumbar paraspinal muscles; and there was spasm of the left and right paraspinal muscles.[62] Dr. Roth prescribed hydroxyzine and

---

[56] *Id.*

[57] AR 372-373.

[58] AR 373.

[59] *Id.*

[60] AR 369.

[61] *Id.*

[62] *Id.*

ranitidine and recommended that Plaintiff increase his physical activity, contact a support group, and resume social interaction; and that he should alternate using heat and ice packs and do back strengthening exercises at home.[63]

At a March 28, 2018 appointment, Plaintiff stated that he was taking his hydrocodone as directed and that it relieved 85% of his pain in the last week, with an average pain being 6/10 and a highest pain level of 8/10, with a pain level of 5/10 when the medication wears off.[64] His back exam resulted in findings identical to prior visits.[65] At a June 28, 2018 appointment, Plaintiff stated that he was taking his hydrocodone as directed and that it relieved 85% of his pain in the last week, with an average pain being 4/10 and a highest pain level of 9/10, with a pain level of 7/10 when the medication wears off.[66]

Plaintiff presented to Dr. Roth on August 28, 2018, for follow-up for back pain.[67] Plaintiff reported that he was taking his hydrocodone as directed and that it relieved 90% of his pain in the last week, with an average pain being 5/10 and a highest pain level of 9/10, with a pain level of 7/10 when the medication wears off.[68]

---

[63] *Id.*

[64] AR 415.

[65] AR 417.

[66] AR 409.

[67] AR 405.

[68] *Id.*

On examination, pain was elicited over the lumbar spinous processes, lumber spinous interfaces, and lumbar paraspinal muscles; and there was spasm of the left and right paraspinal muscles.[69] Dr. Roth diagnosed low back pain, generalized anxiety, esophagitis due to GERD, chronic pain syndrome, benign hypertension, and hypogonadotropic hypogonadism.[70] Dr. Roth noted that Plaintiff had completed physical therapy without improvement and that he uses a cane for ambulation.[71]

In December 2018, Plaintiff was assessed with hypogonadotropic hypogonadism and was sent for follow-up testosterone testing.[72] At a follow-up visit in March 2019, Plaintiff reported chronic pain and stated that his pain in the last week was an of 7/10 and a highest pain level of 9/10, with a pain level of 7/10 when the medication wears off, and was 90% controlled by his medication.[73]

In June 2019, Plaintiff reported that he was taking his hydrocodone as directed and that it relieved 85% of his pain in the last week, with an average pain being 7/10 and a highest pain level of 9/10, with a pain level of 7/10 when the medication wears off.[74] Dr. Roth diagnosed chronic pain syndrome, low back pain,

---

[69] AR 407.

[70] *Id.*

[71] *Id.*

[72] AR 483.

[73] AR 479.

[74] AR 476.

and hypertension and refilled Plaintiff's prescription for hydrocodone.[75]  On August 5, 2019, Plaintiff presented to Dr. Roth and was noted to have low back pain; major depressive disorder, single episode, moderate; chronic pain syndrome; borderline personality disorder; benign hypertension; and hypogonadotropic hypogonadism.[76] On September 5, 2019, Plaintiff said he was taking his hydrocodone as directed and that it relieved 85% of his pain in the last week, with an average pain being 6/10 and a highest pain level of 9/10, with a pain level of 7/10 when the medication wears off. [77] Dr. Roth diagnosed chronic pain syndrome, low back pain, essential hypertension, and sleep disorders.[78] On December 17, 2019, Plaintiff reported identical pain levels to those reported in September 2019.[79]

At a follow up visit with Dr. Roth on September 1, 2020, Plaintiff reported that he was taking his hydrocodone as directed and that it relieved 85% of his pain in the last week, with an average pain being 6/10 and a highest pain level of 9/10,

---

[75] AR 478.

[76] AR 452.

[77] AR 472.

[78] AR 474.

[79] AR 469.

with a pain level of 8/10 when the medication wears off.[80] Examination findings were identical to previous exam findings.[81]

On December 21, 2020, Plaintiff presented to Dr. Roth for flu vaccination.[82] Plaintiff reported that he was taking his hydrocodone as directed and that it relieved 85% of his pain in the last week, with an average pain being 6/10 and a highest pain level of 9/10, with a pain level of 8/10 when the medication wears off.[83] The results of his back exam were identical to those of prior examinations.[84]  At an appointment on May 11, 2020, Plaintiff reported the same pain levels.[85]

On April 19, 2021, Plaintiff presented to Dr. Roth for follow-up for back pain.[86] Plaintiff reported that he was taking his hydrocodone as directed and that it relieved 90% of his pain in the last week, with an average pain being 5/10 and a highest pain level of 9/10, with a pain level of 7/10 when the medication wears off.[87]

---

[80] AR 463.

[81] AR 464.

[82] AR 459.

[83] *Id.*

[84] AR 460.

[85] AR 467.

[86] AR 456.

[87] *Id.*

4.    <u>Analysis</u>

The ALJ gave the following reasoning as to his consideration of Dr. Roth's opinions:

> The claimant's primary care provider, Dr. Roth, also prepared medical opinions. Dr. Roth opined in January 2018 for WorkFirst that the claimant was restricted to range of sedentary work, adding that he could "not sit for long without frequently moving or position changes." (Exhibit B2F, pages 2-4.)

> Dr. Roth prepared a more elaborate medical opinion in December 2022, opining that the claimant was unable to perform even a range of sedentary work, that he required manipulative limitations, that he would be off-task 30 percent or more of the workday, and that he would be absent from work 25 percent or more of the work month. (Exhibit B7F, pages 1-3.)

> The undersigned found that Dr. Roth's respective January 2018 and December 2022 medical opinions were not persuasive because he provided little or no explanation or other support for his conclusions. Dr. Roth did not cite any specific objective medical evidence to support his conclusions, and there was otherwise no obvious support for them in the claimant's medical record. Moreover, Dr. Roth's conclusions were inconsistent with the claimant's medical record, specifically his generally normal musculoskeletal and neurological examination findings with no signs of acute distress or other pain behavior or of impaired ambulation or gait, motor strength, or sensation as discussed above.[88]

Plaintiff argues that the ALJ erred in failing to provide a sufficient level of specificity to support his reasoning; that the ALJ erred in finding that Plaintiff's musculoskeletal examinations were generally normal; and that the ALJ failed to

---

[88] AR 30.

1    consider MRIs performed in 2014 and 2016 that indicated bulging discs with

2    effacement of the right L4 nerve root at the L4-L5 level.[89]

3        While the ALJ's reasoning could be better articulated, he adequately

4    explained that Dr. Roth did not cite to any specific evidence in his opinions, either

5    in his own examinations or in the record itself.[90] While Dr. Roth has administered

6    narcotic pain medication to Plaintiff over a period of time, he has not indicated the

7    need for any other such treatment as further imaging studies, referral to a

8    specialist,[91] or injections, for example.  Additionally, although not referenced by the

9    ALJ, it was the opinion of Dr. Roth in 2018 that Plaintiff's limitations would only

10   be expected to last for 10 months, and that Plaintiff should be attending a "work

11   hardening" program that would prepare him to work.[92] There is no indication in

12   the record that Plaintiff ever attended a work hardening program after Dr. Roth's

13   recommendation.

---

[89] ECF No. 8.

[90] AR 30.

[91] Dr. Roth is a family medicine doctor with specialty in treating hypertension, diabetes, and hypothyroidism. Roth Medical Clinic, *Staff – William T. Roth, MD*, www.rothmedicalclinic.com (last viewed March 4, 2025).

[92] AR 403-04.

The Court notes that on one occasion Dr. Roth acknowledged that Plaintiff used a cane for ambulation.[93] But the Court finds that any failure on the part of the ALJ to include a limitation to the use of a cane for ambulation is harmless because the ALJ elicited testimony from the VE that the three representative jobs cited by the VE, and subsequently the ALJ decision, could be performed if a limitation were included providing for use of a cane.[94]

It is Plaintiff's contention that the ALJ could have developed the record further due to an absence of supporting evidence.[95] But the Commissioner has pointed out that the duty of an ALJ to develop the record is triggered when there is insufficient evidence in the record on which to make a decision.[96] Here, there was not a lack of evidence per se. There were records in the file of over twenty separate office visits made over a period of 4 years, with detailed notes of treatment and examination.[97]

Plaintiff asserts that the ALJ erred by "simply substituting his own lay findings for those of" Dr. Roth.[98] This is simply not true. The ALJ considered not

---

[93] AR 407.

[94] AR 58-59.

[95] ECF No. 8.

[96] ECF No. 16.

[97] AR 367-400, 452-455, 456-508.

[98] ECF No. 8, pg. 11.

only Dr. Roth's opinions, but also the opinions of state agency medical experts Dr. Lancaster and Dr. Billinghurst and found their opinions that Plaintiff could perform work at the light level to be persuasive.

Plaintiff is correct that the ALJ is required to consider both the supportability of an opinion and the consistency of that opinion with the record as a whole. But there is no requirement that the ALJ use the actual wording of supportability or consistency. Here, the ALJ did in fact properly consider those factors, although he did not use those exact words.

Given that Dr. Roth's opinions were inconsistent with each other, failed to cite to supporting evidence, and were inconsistent with the record as a whole, the Court concludes that the ALJ's reasoning was not improper. Because the Court concludes that Dr. Roth's opinions lacked explanation or support, were inconsistent with each other, and were inconsistent with the medical record as a whole, the ALJ did not err in rejecting the opinions. The Court thus concludes that Plaintiff failed to establish consequential error in the ALJ's consideration of Dr. Roth's opinions.

5.    <u>Summary</u>

Because the ALJ committed no error in his consideration of the opinions of Dr. Roth, the Court finds that no consequential error occurred and a remand is not warranted.

**B.    Symptom Reports: Plaintiff fails to establish consequential error**

Plaintiff argues the ALJ failed to properly assess his subjective complaints regarding physical impairments only. He argues that the ALJ erred in finding that

his subjective complaints were not consistent with the record and in reasoning that his allegations were inconsistent with lack of treatment for a back impairment.[99] Plaintiff argues that the ALJ erred in faulting him for failing to seek treatment due to financial limitations, citing caselaw that holds that a claimant should not be held to have refused treatment if he was unable to afford the treatment.[100]

1.  Standard

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[101] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[102] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence

---

[99] ECF No. 6.

[100] *Id.*

[101] *Molina*, 674 F.3d at 1112.

[102] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

undermines these claims.[103] "The clear and convincing standard is the most demanding required in Social Security cases."[104] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[105]

2.    Testimony

On September 27, 2023, Plaintiff appeared with his attorney via video for a hearing before ALJ Shawn Bozarth.[106] Plaintiff testified, and a vocational expert (VE) testified.[107]

a.    *Plaintiff's testimony*

---

[103] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[104] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[105] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

[106] AR 38-63.

[107] *Id.*

When asked if he had outstanding medical records, Plaintiff's attorney stated that Plaintiff's doctor wanted him to get a neurosurgery consult but that before he could see a neurosurgeon, he would need to attend physical therapy and get an MRI and the only physical therapist in his town did not take his insurance.[108]

Plaintiff said the highest grade he completed was the ninth grade and he did not have a GED.[109] He said that since 2017 he had worked for 2 days doing snow plowing and had been fired because he was in pain and could not do the work.[110] His wife worked and they got welfare until 2018, but were now only on Medicaid.[111] Plaintiff said he had a license and could drive but had no car.[112] He said he was limited in taking public transportation by his anxiety when around others.[113] Plaintiff said he lived with his wife and his 17 year old son, that he is six feet tall and weighs 340 pounds, and that he is right handed.[114]

---

[108] AR 41.

[109] AR 42.

[110] *Id.*

[111] *Id.*

[112] AR 43.

[113] *Id.*

[114] *Id.*

DISPOSITIVE ORDER - 25

Plaintiff testified that he was prescribed a cane by Dr. Roth and that he usually holds it in his right hand but at times holds it in his left hand if his left leg hurts more.[115] He said that because his wife works, he will do light things to help out like laundry or dishes if there are not too many.[116]

Plaintiff said he cannot afford the physical therapy office where he lives and that he is at a crossroads with care because he cannot get an MRI until he has completed physical therapy.[117] He said that his mental health issues were treated with medication and that he had counseling in years prior, both as a child and an adult, but did not trust counselors.[118] He said he had anxiety and depression and that he gets depressed due to his physical condition and that even the thought of seeing his wife's family will give him too much anxiety to sleep.[119] He said that he can bath but only does it once a week or week and a half.[120] He said that he will only tie his shoes once and that he wears sweat pants and pull on clothes and changes every three to four days.[121]

---

[115] AR 44.

[116] *Id.*

[117] AR 45.

[118] *Id.*

[119] AR 45-46.

[120] AR 46.

[121] *Id.*

DISPOSITIVE ORDER - 26

Plaintiff said that he will cook with a microwave and that his wife keeps track of his medications.[122] He said his only exercise is walking around the house and that he has no friends because he has been wronged by past friends and is anxious about meeting new people.[123] He said that he watches football, jokes with his children, and sits outside and that before his back injury he liked to garden.[124] He has a grown daughter as well as one minor son who lives with him and one minor daughter who does not live with him.[125] Plaintiff said that because they have no car he and his wife don't go to restaurants but at times order in, and that when they had a car would occasionally go for a drive.[126] He said that his former hobbies were working on cars and gardening and he cannot do either now.[127] He said that he watches several football teams and that the majority of the time he raises his legs because they burn and tingle.[128]

---

[122] AR 46-47.

[123] AR 47.

[124] *Id.*

[125] AR 47-48.

[126] AR 48.

[127] *Id.*

[128] AR 49.

1    Plaintiff testified that on a typical day he raises his legs for 45 minutes to an

2    hour about three to four times a day and that he uses a heating pad.[129] He said

3    that his legs were raised up to his chin level.[130] He said that in a typical day he is

4    sitting most of the time because standing and walking strains his back and make

5    his legs wobbly.[131] He said that he can stand for five to ten minutes before having

6    to sit on a typical day but that on a bad day he is in bed from two thirds of the day

7    to the entire day.[132] He said that in the last three years in a typical month he had

8    bad days for half of each month.[133]

9    Plaintiff testified that he took gabapentin and narcotic pain medicine and

10    that it made him constipated and drowsy so he would unintentionally doze off.[134]

11    He said that he would doze off two to three times a week and that he also took naps

12    during the week.[135] Plaintiff said he napped when he did not get a good night's

13    sleep due to pain and the naps lasted for two to three hours.[136] He said he takes

14

---

15    [129] AR 49.

16    [130] AR 49-50.

17    [131] AR 50.

18    [132] AR 50-51.

19    [133] AR 51.

20    [134] *Id.*

21    [135] AR 52.

22    [136] *Id.*

23

trazodone to sleep and that it helps a quarter of the time.[137] Plaintiff testified that he was taking trazadone, hydrocodone, Lisinopril, gabapentin, olanzapine, famotidine, and metformin and that he has diabetes.[138]

Plaintiff testified that it is hard to concentrate when he is in pain and that he has missed crucial plays when watching football.[139] He said he could wash dishes for 10 minutes but would then need to sit.[140] He said that he gets irritable and will curse or raise his voice, and that he will tell his wife and son to go away and leave him alone.[141]

###### b. *Vocational expert testimony*

LaKeisha Rodgers, PhD, testified as a vocational expert.[142] When given a hypothetical consistent with the exertional limitations only of the ALJ's formulated RFC, the VE testified that the individual could perform the jobs of marker (DOT 209.587-034), collator operator (DOT 208.685-010), and router (DOT 222.587-038).[143] When given a hypothetical that reduced handling and fingering to

---

[137] *Id.*

[138] AR 52-53.

[139] AR 53-54.

[140] AR 54.

[141] *Id.*

[142] AR 55-63.

[143] AR 55-56.

occasional and prohibited overhead reaching, the VE stated the jobs would be eliminated and offered the substitute jobs of usher, school bus monitor, and child attendant, with a sum total of 13,000 jobs in the national economy.[144] When given a hypothetical to add the use of a cane to ambulate and asked if the jobs in the first or second hypothetical would remain, the VE stated that they would.[145] As a fourth hypothetical, the ALJ added the nonexertional requirements consistent with the ALJ's formulated hypothetical RFC and asked if the jobs from the first or second hypothetical would remain and the VE testified that only the jobs for the first hypothetical would remain.[146] When asked if the jobs for hypothetical one remained if there was a limitation to both frequent handling and fingering the use of a cane, the VE stated that they would remain.[147] When asked if the jobs would remain if the individual needed a ten minute break each hour or would be absent two days a month, the VE stated they would not remain.[148]

The VE testified that the tolerance for unscheduled absenteeism is one day per month and the tolerance for off-task behavior is 10%.[149] When asked if the

---

[144] AR 56-57.

[145] AR 57.

[146] *Id.*

[147] AR 58-59.

[148] AR 59.

[149] AR 60.

1   individual needed an additional break that would not be consistent with

2   competitive employment.[150] She also testified that an individual would not be

3   allowed to raise their legs above waist level.[151] When asked if an individual would

4   be able to stay employed if they could only complete one third of a one hour

5   training or complete one third of a full day training, she said no.[152] When asked if

6   an individual would be allowed to raise his voice and swear at his supervisor, the

7   VE stated that they would not.[153] She said that reaching for all three jobs identified

8   in hypothetical one was frequent.[154]

9          3.       The ALJ's Findings and Analysis of those Findings

10         The ALJ considered Plaintiff's complaints regarding his back impairments

11  and found that they were not generally consistent with the record as a whole.[155]

12  The ALJ reasoned that Plaintiff's complaints were inconsistent with this routine

13  and conservative course of treatment, with his generally normal findings on

14  examination, and with his reported functioning.[156]

15  _____

16  [150] *Id.*

17  [151] AR 60-61.

18  [152] AR 61.

19  [153] AR 61-62.

20  [154] AR 62.

21  [155] AR 27.

22  [156] AR 27-28.

23

The ALJ first addressed his reasoning regarding the inconsistency of Plaintiff's statements with his course of treatment, stating:

> As discussed above, the claimant's medical record shows that he has severe degenerative changes at the L2-L3 and L4-L5 disc levels, but that those changes have prompted limited treatment. His treatment has primarily consisted of pain management, which has included Baclofen, Gabapentin, and Hydrocodone. He repeatedly reported that those medications provided up to 85 percent pain relief, but he did not report any side-effects from them. The effects of the claimant's obesity likely contributed to his need for pain management, but notably did not prompt any specific weight loss treatment. Moreover, the claimant's examination findings further supported that his course of treatment was effective.[157]

He then went on to address his reasoning that Plaintiff's subjective complaints were not supported by the physical examinations, and noted the following:

> His treatment notes show that he presented with muscle spasms or tenderness over his lumbar spine in September and December 2020, but that he has otherwise had normal or unremarkable musculoskeletal and neurological examination findings since September 2019. Those normal findings included that the claimant did not show signs of acute distress or other pain behavior or of impaired ambulation or gait, motor strength, or sensation. The claimant's positive response to pain management and generally normal musculoskeletal and neurological examination findings indicated that his back condition and the effects of his obesity were relatively mild and had a limited impact on his physical functioning. (See Exhibits B1F-B3F, B5F, and B6F throughout.)[158]

The ALJ further reasoned:

---

[157] AR 27.

[158] *Id.*

Furthermore, the claimant's courses of treatment for his back condition, obesity, GAD, and MDD and generally normal examination findings greatly undermined the alleged severity of his symptoms. If the claimant's symptoms were as severe as alleged, they would have likely been more resistant to pain management, prompted more aggressive mental health treatment, or presented more consistently or dramatically on examination. However, they did not. Similarly, if the side-effects of the claimant's medications were as severe as alleged, he would have likely reported them, but he did not. As such, the alleged intensity, persistence, and limiting effects of the claimant's symptoms were inconsistent with his courses of treatment and generally normal examination findings.[159]

The ALJ then went on to note that Plaintiff's reported activities were also inconsistent with his subjective complaints:

The claimant's allegations were further undermined by his reported functioning. He wrote in both his February 2021 and January 2022 Function Reports that he could still perform many of his activities of daily living, such as tending to his personal care, doing dishes, laundry, and other household chores, driving himself, going shopping, and managing his finances. He emphasized his difficulties with being around others and social withdraw in those reports, but noted that he lived with and spent time with family-members and that he could run errands or leave his home unaccompanied. The claimant testified to a similar degree of functioning at the September 27, 2023, hearing, noting that he played with his kids and that him and his family occasionally go out, such as to restaurants. The claimant's reported functioning—in combination with his courses of treatment and generally normal examination findings—contrasted sharply with the alleged limiting effects of his pain, problems with being around others, and other symptoms and instead supported that he could still perform and sustain a range of unskilled light work. (Exhibits B4E, pages 2-9, and B7E, pages 2-9, see also Exhibit B6F throughout.)[160]

---

[159] AR 28.

[160] *Id.*

1      Plaintiff argues in his brief and reply that the ALJ erred in finding that

2   Plaintiff did not pursue further treatment and asserts that the ALJ was

3   impermissibly penalizing Plaintiff for not seeking treatment which he was unable

4   to afford.[161] Plaintiff specifically argues that he was unable to see a specialist

5   because in order to be referred to a specialist he would first need to get an MRI and

6   that he would not be approved to get an MRI until he completed a course of

7   physical therapy.[162] At the hearing, both Plaintiff and his counsel raised this issue

8   and both testified that Plaintiff could not attend physical therapy because the only

9   physical therapist in his city did not take his insurance.[163]

10      However, the Commissioner, in his brief, first asserts that there is no

11   mention in the medical record that Dr. Roth considered sending Plaintiff to a

12   specialist or for an MRI.[164] The Commissioner also argues that even if Plaintiff

13   needed to go to physical therapy, as he alleges, Plaintiff lives within 18 miles of

14   Spokane and that there are a number of physical therapists who would be able to

15   treat him under his insurance.[165]

16

17

---

18   [161] ECF Nos. 8, 17.

19   [162] *Id.*

20   [163] AR 41, 45.

21   [164] ECF No. 16.

22   [165] *Id.*

23

DISPOSITIVE ORDER - 34

The Court agrees with the Commissioner.  There is no question in the record that Plaintiff was covered under Medicaid during the relevant period, as Plaintiff confirmed during his hearing testimony that he was covered.[166] Plaintiff's implied assertion that he was unable to access care outside of his small town is belied by the fact that he has regularly treated during the period in question with Dr. Roth, whose office is located in Spokane.  Additionally, Plaintiff's arguments that he was unable to afford transportation to other cities fails because Plaintiff's Medicaid coverage includes provisions for transportation to and from necessary medical appointments if he cannot afford it himself.[167] If Plaintiff is physically able to travel to Spokane to attend and appointment with Dr. Roth there is no reason that he would be unable to travel to Spokane for physical therapy using a Medicaid provided taxi.  Neither Plaintiff nor his attorney offered testimony or evidence of any sort that Plaintiff had ever even requested that he be provided transportation to physical therapy appointments.

A claimant's course of treatment, including an inadequately explained failure to seek treatment, is a relevant factor for the ALJ to consider when

---

[166] AR 42.

[167] Washington Health Care Authority, *Transportation services (nonemergency),* www.hca.wa.gov.

1  assessing the claimant's symptom reports.[168] Here, the ALJ permissibly considered

2  that Plaintiff did not seek treatment beyond the conservative care given him.

3        The Court also concludes that the ALJ did not err in considering Plaintiff's

4  consistent and repeated reports to Dr. Roth that his medication relieved not less

5  than 75% of his pain and up to 90% of his pain when considering the consistency of

6  his subjective claims.[169] A claimant's course of treatment, including whether

7  symptoms improved with treatment, is a relevant factor for the ALJ to consider

8  when assessing the claimant's symptom reports.[170] "[E]vidence of medical

9  treatment successfully relieving symptoms can undermine a claim of disability,"

10 and an ALJ may discount a claimant's reported symptoms if they sufficiently

11 improved with treatment.[171]

---

[168] 20 C.F.R. § 416.929(c)(3).

[169] AR 26, 367-400, 452-455, 456-508.

[170] 20 C.F.R. § 416.929(c)(3). See *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[171] *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). *See also* 20 C.F.R. § 416.913(c)(3); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[172] An ALJ may consider discrepancies between a claimant's reported symptoms and the observations of treatment providers.[173] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints.[174]

Here, the ALJ cited to Dr. Roth's medical records and to the fact that there is no notation in his treatment records that Plaintiff had abnormal gait, motor strength, or sensation – which are symptoms generally noted in the event of severe musculoskeletal impairments.  The medical records do not document any muscle atrophy or pain response beyond spasm in the paraspinal muscles. While the Court might interpret the record differently, it declines to find that the ALJ's reasoning was not supported by substantial evidence.

---

[172] 20 C.F.R. § 416.902(f); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[173] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[174] *Smartt*, 53 F.4th at 498 (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

As to the ALJ's reasoning that Plaintiff's subjective claims were inconsistent with his activities of daily living, the Court finds that the ALJ has adequately explained his reasoning. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of work-related functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[175] The ALJ highlighted that Plaintiff testified that he was able to shop, tend to his personal care, drive himself, and do laundry.[176] The ALJ referenced Plaintiff's written testimony in which he stated that he shopped three to four times a month for about four hours and that he went out driving four times a week.[177]

Although not noted by the ALJ, the Court additionally finds Plaintiff's assertions that he was physically unable to attend physical therapy appointments in Spokane to be unconvincing considering his many visits to Dr. Roth that took place in Spokane.

Plaintiff's reliance on caselaw that holds it improper for an ALJ to discredit testimony because of an ability to engage in ordinary, light, or sedentary activities is misplaced. Here, Plaintiff alleged that he was unable to engage in even sedentary activity.

---

[175] *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (superseded in part on other grounds by statute).

[176] AR 28.

[177] AR 308.

1    Viewed in context, it is clear the ALJ did not simply discredit Plaintiff's

2  subjective claims regarding his all of his physical impairments due to lack of

3  treatment for his back condition.  The ALJ properly considered the lack of

4  treatment for a back impairment along with considering other factors such as the

5  inconsistency with statements Plaintiff made to his medical provider that his pain

6  medication relieved most of his pain. The ALJ may discount a claimant's reported

7  disabling symptoms if he can spend a substantial part of the day engaged in

8  pursuits inconsistent with the reported disabling symptoms.[178] In this instance, the

9  Court concludes that the ALJ properly considered that Plaintiff's reported

10  activities were not consistent with his allegations of extreme limitation.

11    The Court concludes that the ALJ adequately explained his reasoning and

12  committed no error.  The Court declines to remand as to this issue.

13    4.    <u>Summary</u>

14    It is the ALJ's responsibility to review and evaluate the conflicting evidence

15  and Plaintiff's subjective complaints.[179] The ALJ meaningfully explained why he

16  evaluated Plaintiff's subjective complaints as he did, and these reasons are

17  supported by substantial evidence.

18

19

20

21
_____

22  [178] *Molina*, 674 F.3d at 1113.

23  [179] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

**C.      Step five: The Court finds this issue moot.**

Plaintiff alleges that because the ALJ erred in rejecting the opined limitations provided by Dr. Roth and by discounting Plaintiff's subjective testimony the ALJ gave a flawed hypothetical to the VE.  Because the Court concluded that the ALJ did not err in either regard, this issue is moot.

### IV.      Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.      The ALJ's nondisability decision is **AFFIRMED**.

2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 16**, enter **JUDGMENT** in favor of **Defendant**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 17th day of March 2025.

_____
EDWARD F. SHEA
Senior United States District Judge